JUDGE, CHUCK P. MILLER, U.S. D.C. Chief Judge will return. But he asks that you begin your argument. As you know, the arguments are all being taped. So whenever the Chief Judge misses while he's at, we'll be able to listen to at lunchtime. Welcome back to the Court, Mr. Phillips. I haven't had you appear in front of me for a year or so. It's been a while. Nice to have you back. This case, for the record, and I have two cases that are consolidated for purposes of I believe you were given 20 minutes' time for argument. It looks like you're going to ask for five minutes' rebuttal. Correct. Could you reset the clock, please? I was just saying, for the record, these cases are Cruiser's Fire Crew Transport Inc. against the United States. And the second one, is it labeled the same way? Yes. Cruiser's Fire Crew Transport Inc. against the United States. Please proceed. Thank you. There are three cases, binding precedent cases, that are involved in the resolution of these two appeals. The first is the 1960 decision of the old Court of Claims in Locke, which was a typewriter repair contract. There is a decision of this Court in Ace Federal Reporters, which was a transcription services contract. And then there's Ridge Runner, and Ridge Runner was a contract with the Forest Service for the higher... Could you speak up just a little bit more? I'm a little hard of hearing. For the higher, if ordered, of three fire engines. Let me begin with Locke. Locke is, in many respects, factually similar to this case. In the Locke case, it was a federal supply schedule contract, which included mandatory and non-mandatory users. The contractor was terminated for default. The GSA board overturned the default, but denied the lost profits claim. And the claim came before this court. The court analyzed whether or not the schedule contract was a binding contract. And what ultimately the court held was that because the schedule contract, both mandatory and non-mandatory sites, placed limits on the available competition for these transcription services in San Diego, it was a binding contract, and it remanded for the termination of lost profits. Ace Federal... Mr. Phillips, in the two agreements that we have in front of us, from your clients to services that would be willing to provide the Forest Service, was the government obligated to place an order? No. No. And was your client, if the government placed an order, was your client bound to accept? No. Okay. We had a BPA just like that in modern systems technology against the United States cited by the government, which is a bit of an oddity because it was decided in precedential format in 1992 at a time when we permitted our panels to adopt opinions of the Court of Federal and in that case we adopted, as I think you know, Judge Brookings' fine opinion. Yes. And in that case, the basic pricing agreement, the BPA, clearly provided, as Judge Brookings said, the government wasn't obligated to place an order and the contractor wasn't bound unless it accepted. And Judge Brookings said, that doesn't form a contract for Tucker Act purposes. Yes. Now, why doesn't that precedent simply decide this case? I realize that we no longer do that. We no longer, starting in 2006, we amended our IOPs to say we no longer would adopt an opinion of the lower court precedentially as ours. But if your case, like modern systems technology, is one in which the government isn't obligated to place an order, and if they place an order you're not obligated to accept it, and if that didn't constitute a Tucker Act contract, why does yours? Because in these two cases that are before the court and in Ace Federal and in Locke, there was value to the fact that you got put on a list and that the competition for the requirement was limited to that list. That's the distinction between Ace Federal and Locke in Ridge Runner. There is no limitation on competition in Ridge Runner, but there was. It's a value that's elusive. Let's say, for example, you're right, and the fact that the government, if it was going to place an order, had to place it with your folks, because you were number one on the priority list, right? In terms of price. That's the way it worked. OK. So if they were going to place it, they had to place it with you. And you say, that creates value. Value like for what? So let's assume they said they're never going to place an order with you or with anybody else, the value would be zero, correct? In the marketplace, you're going to go sell that, right? Well. To stand first in line, right? But it does have value, and Locke holds that it has value. Explicitly, Locke says, let me quote. By the way, what is the Locke case you're referring to? I didn't see it in the brief. I didn't see it in the brief either. I'm not sure if you have. Locke was relied upon by the court below. It's not in your brief. Can you give us a cite? Yes, Your Honor. 283 Fed 2nd, 521. Is that our case? The old court of claims, 1960. Oh, I see. 283 Fed, not Fed. 283 Fed 2nd, 521. 521? Yes. Let me quote. You can rely on that, and you didn't put it in your brief. But let's address Judge Clevenger's point, which is what value is there in being number one on the list? Well, actually, that's a holding in Locke at page 523, and I'll quote it. We cannot believe that in this instance, plaintiff bargained merely to have his name printed on the supply schedule. It appears more important that being in the schedule created a reasonable probability that business would be obtained. Particularly, this is so when it is noted that among the four San Diego repair companies originally put in the schedule, plaintiff was the low bidder. How does that go to mutuality? I mean, my understanding of what Judge Braden said, what Judge Brookings had said in the earlier binding precedent, is that there's no mutuality. So there's no contract. The re-statement. There's great value to being someone to whom the government will turn in a situation where you have a half-assed requirement contract, which is what these things are. Yes, they are. Obligation. That's exactly what they are. That's what I call them. I'm sorry about the term, but they're an illusory requirements contract. Yes. And so the fact that you have been designated as someone to whom the government would want to. What's your response? They are still enforceable, and I'll explain why. Professor Corbin has the rule, which is adopted by this court, that holds that where the parties parties demonstrate a clear intention to be bound to their manifested intention. And there's writings here. Corbin teases that courts should be slow to deny enforcement. And Corbin is reflecting. If I understand Judge Clevenger right, what enforcement could there be? Even if you were at the top of the list, and even if the government offers you an opportunity to supply a bus, you can say, I'm unwilling, or I'm unable. All my buses are on loan at the moment. So there's no way we could ever know what to enforce, right? No, that's not true, because in these two contracts, the only persons that got called for these requirements, one for tents and one for buses, were those on the list. And when cruisers was right to proceed with those preseason incident, what they could do. But you don't have to accept, even if they offer it. But if I am not on the list, if I'm fired from the contract, I'm not even ever going to get a phone call. That's the benefit. But the fact that you got fired from the list and defeated an expectation doesn't go back in time to create mutuality at the time of having created the basic purchase agreement. Your Honor, these are not bilateral contracts. These are unilateral contracts. They are a promise to pay for a performance if the performance is ordered. Mutuality is not required. To pay for a performance if what? If the performance is ordered. But you don't have to accept. No, that's true. But on the other hand, if I'm not on the list. How do we have a contract? I'm struggling here. Well, that was the holding in Locke, and it's the holding in Ace Federal. How do you have a contract? You have to have a contract to get in under the Tucker Act. That's correct. Where's the contract? Well, this is the contract. It's the Penance Act, not the Tucker Act, but same point. You've got to still get in with a contract. Where's the contract? The contract is we will render a performance in exchange for your promise to pay for it. It's a unilateral contract. Unilateral contracts are defined in the Federal Acquisition Regulation as contracts subject to the FARC. But you did not even make that promise. You didn't promise to do anything, and they didn't promise to offer anything. There were no exchange promises here. There was a promise, and their promise was, if we decide to order a tent or a bus from a private party, we will do so in accordance with this list. Six areas, and your client was number one on the list. Right. And in many of the lists, he was the only one on it, and in many of the lists, he was the low-offer order. Let me take you into a different direction, because this is, as far as I know, this is the second time that cruisers have appeared before the court. And in 2011, you were here, and you were arguing. You were challenging the terms of the BPA at that time on provision of buses, and you were arguing that the BPA was illusory and unenforceable and arbitrary and capricious and was not a contract. And the court of claims agreed with you, and we affirm. You've changed your position now, and it appears you're arguing to us, or you are arguing to us, that a BPA is a contract and is enforceable, is not illusory. Why the shift in this argument? The previous challenge was not that the contract was illusory. But that was your argument. The previous challenge was the fact that there was an unfettered preference in that solicitation, which still exists, to order buses or tents, and in that case, it was buses, from cooperators, and cooperators in the terms of buses is usually local school districts in the western United States. That case, the court dismissed as moot based on the default termination, which we challenged at the court, lost, and then came here. Those are the facts. The challenge before the court in the previous proceeding, and I think, I know Judge Rader was on the panel, and perhaps you were. But in here, we have, there's a quotation from the court of claims in that case. It says, a BPA is merely a framework for future contracts and only creates a contractual obligation with regard to accepted orders. And this goes to what Judge Rader was talking about. There's cases out there that hold that a BPA is just a framework for future contracts. You have to accept the promise in order for there to be a binding or enforceable contract. But the problem, which is addressed with the complaint here, with the complaint before the court of federal claims, the Contract Disputes Act complaint, not a claim for money damages, by the way, a claim to get the contract reinstated and to be eligible to receive orders. This contractor is frozen out of this business until March of next year on the one contract, and April of next year on the other. So that's really, the basis of your complaint is that you're no longer in line to have the opportunity to enter into a contract. Correct. And how can that be enforceable under the Tucker Act? It's enforceable under the Contract Disputes Act, the A2 jurisdiction of the court of federal claims. So you're saying that even though you don't have a contract for Tucker Act purposes, you concede that there's no contract for Tucker Act purposes yet? No. No. I assert there's a contract here, as contract is defined in Federal Acquisition Regulation 2101. But your problem is that your client's not in line to have the opportunity to enter into a contract. My client was in line. He's no longer on the list. Your problem is that your client's no longer in line. He will never receive another phone call. The phone will never ring. How can that be a contract enforceable under the Tucker Act? There is no contract. There is a contract, and the contract is the limitation on competition. That was the point in Locke, and it's the point in Ace Federal. Mr. Phillips, I've been looking through Judge Braden's opinion, trying to find a citation to the Locke case. I see a citation and discussion to Ace Federal, and so I was prepared to deal with Ace Federal. Can you point to me in Judge Braden's opinion where the Locke case was discussed? Would you be helpful to me? I didn't trip over that. Are the opinions, they're substantial to the same, are they not? Yes, they are. Which one are you looking at? Well, I'm looking at 64, which is the tents. Tents? Yes, all right, tents. In the tent decision? Paginated at the top. Yes. Yes. Under their system, that's the way it's paginated. And it appears that I did misspeak. It is Ace Federal that goes back to the Locke case. So Ace Federal contains a citation to the Locke case? An extensive discussion of the Locke case, in fact. But it's not in, I don't see it either in the Braden opinion. No, I don't either. Right now. All right, I think we're into your rebuttal time. Should we hear from Ms. Lynch? Yes, please. Good morning, Your Honor. May it please the Court. We respectfully request this Court affirm the trial court's dismissal of these cases for lack of subject matter jurisdiction. As this Court has recognized, these blanket purchase agreements are not contracts. They contain illusory promises on both the government and cruisers. Mr. Phillips relies heavily on this Locke case, and he read us a provision out of it. Can you comment on that? Yes, Your Honor. In the Locke case, it's distinguishable from the case at issue here, because that was a requirements contract. And in Locke, the contractors on the schedule were not obligated, they could not, they did not have the option of saying no. If an order was placed, they would have to. Yes, that's the difference between this and a requirements contract. That's correct, Your Honor. So here we have two illusory promises. Is that true also in Ace Federal? That is also true in Ace Federal. But Ace Federal and Locke are impairing material. Their requirements contracts were. Because one of the things that was contracted for in both of those instances was the availability of the resource. And here, the Fire Service has given the BPA holders the right to decline any orders that are placed. They only had to accept to the extent that they were willing and able at the time of order. So because there's that very clear escape hatch for them, this cannot be a binding promise on either side, as this Court determined in Ridge Runner in a tender agreement case that had very similar language. This Court just determined that those were illusory promises that could not be binding on the government and did not form a contract. Given the fact that. So in Ace and in Locke, the contractor was obligated to accept when the order was made in the requirements contract. That is correct. It wasn't very hard to figure out why there's value in that. That is correct. When you're terminated for default from that contract, you say, wait a second. Yes. Yes, Your Honor. And in this case, there is no value. When you'd ask for the goods, I was obligated to supply them. I didn't get to supply them. Raider Industries got to supply them. To my detriment, I'm injured. My damage is. Right? Yes. Yes, Your Honor. Do I understand correctly that the purpose for this BPA is really to have, I think as Judge Rayna said, a framework in place so that in an instant, you have a contract if you need one. And with this dealing with instantaneous emergencies, that might be helpful. Yes. This is the way of the future. And we've had Judge Dyke and Judge Plager and I had a case recently that dealt with these type of contracts. And the question was, which contract board do you go to when you're terminated was the problem. But we learned that this is how all the agencies now do it. That's how they have, they say, well, these are going to be our needs. And it's all down to the specific type of computer you need or whatnot. And the list is out there. And when they need them, they go to a list and say, will you give it to me? And particularly in these exigent circumstances, when there's a fire that breaks out, that's exactly why the fire service has established these blanket purchase agreements. There's a whole section in the fire that deals with these contracts. Is this correct that this is kind of a wave of the future? I don't know that I can speak to whether it's a wave of the future, but certainly this is how the fire service is handling its exigent needs for fire control and suppression. Do these other instances outside this case all do the same thing, where both parties have a right to participate or not? In a blanket purchase agreement, yes, Your Honor. That is the case. That is the case. And then we certainly don't dispute that once an order is placed pursuant to this blanket purchase agreement, unaccepted by a BPA holder, that certainly does create an enforceable contract at that point. But that is not the situation that we have here, and therefore we respectfully request that this court dismiss it. Our experience with these BPAs have been where a contract was formed, where the government said, I'd like to get these computer services. The other guy said, yes, I'll supply them. Here are the terms and conditions, and then things fall apart. But there's an actual contract. What do you make of Mr. Phelps' interesting argument that he may not have a Tucker Act contract per se, but he somehow has managed to cobble together a contract under the Contract Disputes Act, which the Contract Disputes Act isn't jurisdiction giving. I wasn't certain I followed what he was saying. Did you have a? Well, Your Honor, as far as I understand it, in order to have a Contract Disputes Act contract, there must still be a contract, and we still have to look to the same element. Jurisdiction still comes from the Tucker Act. And that is correct, Your Honor. If you have this BPA, does that insulate the government against any bid protest actions? Is that the purpose of this? Well, again, the purpose of this is just to ensure that in these exigent circumstances of forest fires and needs, they're able to understand the terms and conditions. I'm talking about BPAs in general. Do they insulate you against bid protest actions? Not in the first instance. Certainly, the invitation for quotations in this case is subject to bid protest jurisdiction. So if a company is not in the first instance, they're not put on the list, they can argue. They can challenge. Yes, Your Honor. But that, again, is not the situation that we have here. I understand. But there have been fights in the past, I believe, about the terms and conditions of the basic BPA agreement or what goods and services are put on and supplies. And I've seen a case where there's contest as to how you formulated the basic BPA agreement. Precisely, Your Honor. That was Cruiser's. Cruiser's won. Yes, Your Honor, that is correct. And then Cruiser's won. Cruiser's was arguing the BPA is not a contract. That is correct, Your Honor. That is correct. Thank you. Ms. Lynch, anything further? Nothing, Your Honor. Thank you very much. Thank you. Mr. Phillips, you have three and a half minutes. Thank you, Your Honor. I mentioned earlier that the typewriter contract, Federal Supply Schedule contract, and LOC covered mandatory and non-mandatory users. And the point is it was not a requirements contract and it didn't have to be used. And here's another quote from LOC, and I'll quote the same sort of language from ACE Federal. In LOC, it says, in addition to mandatory use, the Department of Defense optionally might use it. And contractors on these optional orders were at a liberty of decline progressive awards which arose from the optional provisions of the contract. That's the same provision here. Almost word for word. In ACE Federal, in ACE Federal. But if they're requirements contracts, that's different, right? It's not a requirements contract because it's covers non-mandatory users. And the court held that the fact that the competition was limited to those that had a schedule contract, had value, and it was a binding promise. That's LOC. In ACE Federal, and I'm quoting again from the opinion, the government cites the multiple awards clause of the contract stating the agencies are instructed to consider other sources. It's not a requirements contract. Just not. It is a contract that limits competition to those that had the schedule contract. And that's what has value, and that's what Cruisers is fighting for before the Court of Federal Claims and has now come before this court. We're not here seeking money damages. We're seeking the right to compete for these requirements. You've actually waived your claim to money damages, haven't you, in your brief? No. You said this is not a case about money damages. Well, at this point, a claim for money damages would be premature because it's a three-year contract that isn't up yet. Well, I was so confused in your brief where you said this is getting everybody to be darn sure, Federal Circuit, this is not a case about money. It is not. This is a case about reinstatement. Correct. That's exactly right. At this point, a money claim. That was your pleadings. In the final paragraph of both of your amended complaints, you asked for expectation damages of money. I don't think so. Hm? I don't think so. I read them. I think the pleadings are here. Let's see. A breach of contract damages, including expectation damages. Are those periods during the three-year period when we were unlawfully suspended? That's on A-243. But that's asking for a declaration which is available under the Contract Disputes Act, A-2, and not under the A-1 jurisdiction of the Court of Federal Claims. That's a perfectly proper pleading, but it's not a money claim. A money claim would have to be certified and presented to the contracting officer, and the contracting officer would have to rule under the Contract Disputes Act provisions before the Court of Federal Claims even had permission. Your certified claim here was having to do with termination, not with dollars. Pardon? Your certified claim here had to do with termination, not with dollars. Correct. So are you saying that you're not seeking any type of monetary damages at all and you haven't been? Not at this point, no. And we haven't been. We've been seeking a declaration. Where's the money mandating provision that gives you jurisdiction? There is no requirement in the Contract Disputes Act for a money mandating provision of a contract. That's a separate jurisdiction. That's the A2 jurisdiction. Mr. Locke, my law clerks, Mr. Phillips, my law clerks looked up Locke and Beck, and they send me this quote there from. Each bidder whose bid was accepted and whose name was listed in the schedule was obligated to perform. That obligation made it a requirements contract, didn't it? Yes, it says that, and it also says, and I'm looking at the end of the first long paragraph in subparagraph one. It's page 523 in the report. However, contractors were at liberty to decline. Those progressives awards which arose from the optional provisions of the contract. And the court of claims. From the optional provisions of the contract. That's correct. That's exactly what it says. I had that too, but the point is, the obligation made it a requirements contract. I don't think so. Okay, thank you, Mr. Phillips.